KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Edward G. Kehoe
Managing Partner-NYC
Direct Dial: +1 212 556 2246
Direct Fax: +1 212 556 2222
ekehoe@kslaw.com

August 12, 2016

**VIA OVERNIGHT DELIVERY**

Dirección General de Asuntos de Economía Internacional
Competencia e Inversión Privada
Ministerio de Economía y Finanzas
Jirón Lampa 277, piso 5
Lima, Peru

**Re: Renco v. Peru: Notice of Intent To Commence Arbitration Under the U.S.-Peru Trade Promotion Agreement**

Dear Sir or Madam,

We write on behalf of our client, The Renco Group, Inc., regarding Peru's treatment of Renco's investment in Peru, and Renco's intent to commence an arbitration against Peru under the United States-Peru Trade Promotion Agreement, which entered into force on February 1, 2009 (the "Treaty").

On August 9, 2011, Renco initiated an arbitration under the Treaty, asserting claims for breach of the Treaty and breach of investment agreements. By decision dated July 15, 2016, the tribunal that had been empaneled to hear those claims dismissed them on a technical jurisdictional ground and without prejudice to refiling them. Renco intends to refile some of those Treaty claims in a new arbitration under the Treaty in a manner that cures the technical defect that was the basis for their dismissal.

Renco also intends to bring two new claims against Peru under the Treaty that ripened in year 2015 as set forth in more detail below. Accordingly, as is required by Article 10.16.2 of the Treaty, Renco hereby provides you with a written notice of intent to submit claims to arbitration under the Treaty.

Also, Renco, and its affiliate, Doe Run Resources Corporation ("DRRC"), intend to file other claims, which concern different measures, in a separate arbitration pursuant to the dispute resolution procedure of the Contract of Stock Transfer between Empresa Minera del Centro del Peru S.A. ("Centromin") and Doe Run Peru S.R. LTDA ("DRP"), Doe Run Resources, and Renco, dated October 23, 1997, and the Guaranty Agreement, dated November 21, 1997 (the

"STA Arbitration"). Activos Mineros subsequently assumed Centromin's obligations under the STA.

In the STA Arbitration, Renco and Doe Run Resources will assert claims against Activos Mineros and Peru for their failure to honor their contractual obligations with respect to lawsuits brought by Peruvian citizens against Renco, Doe Run Resources and others, currently in the Courts of the United States in St. Louis, Missouri. The plaintiffs in the St. Louis litigation seek monetary damages for personal injuries they claim are attributable to operations of La Oroya Metallurgical Complex.

Renco has its principal place of business at One Rockefeller Plaza, 29th Floor, New York, NY 10020. Its telephone number is 212-541-6000, and its facsimile number is 212-541-6197. Renco is a legal entity organized under the laws of New York, United States of America.

**Renco's Previously Filed Claims that Renco Intends to Refile**

In the prior Treaty arbitration, Renco asserted claims that Peru's imposition of additional environmental projects and requirements while simultaneously and improperly refusing to timely grant DRP reasonable extensions to fulfill these new obligations, and engaging in a smear campaign that publicly disparaged DRP and undermined its ability to obtain financing, violated the Treaty in various ways. Renco intends to assert those claims in a new arbitration under the Treaty.

Renco does not intend to assert claims in the new Treaty arbitration concerning Peru's failings and breaches with respect to the St. Louis litigation. As stated above, Renco and its affiliate, Doe Run Resources, intend to commence a separate international arbitration under the dispute resolution process of the STA with respect to those third-party claims (in the event that a non-binding expert process is unsuccessful).

**Renco's New Claims Concern Breaches of Articles 10.5 and 10.7 of the Treaty**.

Renco indirectly owns Doe Run Peru ("DRP"), a company incorporated under Peruvian law. After one of DRP's creditors placed DRP in bankruptcy before the Bankruptcy Commission of The National Institute for Defense of Competition and Protection of Intellectual Property ("INDECOPI"), the legal body within the Peruvian Executive branch that administers bankruptcy proceedings, Peru asserted a patently improper claim in that bankruptcy proceeding in an amount of US$ 163 million.

In the DRP bankruptcy proceeding, the Ministry of Energy and Mines (or "MEM"), a central authority of the Peruvian State, alleged that because DRP failed to complete one of nine of its environmental projects (known as the "PAMA") within the timeframe that Peru and MEM had improperly refused to extend, MEM itself would be required to complete those projects. MEM further alleged, also improperly, that the amount of money estimated as needed to complete the outstanding PAMA project constituted a "debt" of DRP to MEM and was accordingly a bankruptcy credit in the bankruptcy proceeding before INDECOPI. That patently improper credit gave Peru nearly one third of all voting rights on the bankruptcy's creditors'

committee. It also gave Peru the right to recover a large portion of DRP monies that should go to legitimate creditors, and it severely complicated DRP's efforts to address the obligations it owed to other legitimate creditors. Throughout the bankruptcy proceedings, Peru used its creditor voting rights to DRP's detriment by, among other things, voting against reasonable restructuring plans, including one proposed by Renco, and supporting a subsequent vote to liquidate DRP.

DRP opposed MEM's application for recognition of its credit before the INDECOPI Bankruptcy Commission which in February 2011 issued a resolution rejecting MEM's $163 million credit claims on the ground that MEM's claims that the obligation to complete the PAMA was not a "debt" of DRP and therefore not a claim that can be recognized in the bankruptcy process. The INDECOPI Commission correctly explained that the regulatory objective of the PAMA is to cause the owner of mining activity to implement steps needed to reduce or eliminate emissions. The INDECOPI Commission further held that if the owner of the mining La Oroya Metallurgical Complex does not complete a PAMA project, the applicable legislation does not provide for, nor does it obligate MEM to complete that PAMA project and cannot therefore constitute a bankruptcy credit.

MEM appealed the INDECOPI Commission's Resolution to the Bankruptcy Chamber of INDECOPI's Free Competition Tribunal (the "INDECOPI Tribunal"), the appellate body within INDECOPI, and, in November 2011, the INDECOPI Tribunal issued a resolution reversing the INDECOPI Bankruptcy Commission's prior resolution reasoning that the non-fulfillment of the single remaining PAMA project "generated a direct and immediate damage" and that the estimated costs needed to complete the PAMA projects were an appropriate estimate of that damage. This decision drew a sharp dissent from one of the INDECOPI Tribunal's members who explained that the estimated investment necessary to complete the PAMA at some future date does not constitute a valid bankruptcy credit, but that such non-completion merely permitted MEM to (i) impose pecuniary sanctions upon the mining company and/or execute the performance bonds constituted to guarantee the fulfillment of the project contained in the PAMA; and, (ii) should non-compliance persist, the provisional closure and, eventually, definitive closure of the mining deposit.

DRP challenged the INDECOPI Tribunal's resolution in an administrative action before the Peruvian judiciary, which assigned the case to the Fourth Transitory Administrative Court of Lima. The Fourth Administrative Court denied DRP's request for annulment of the INDECOPI Tribunal's resolution and therefore admitted MEM's $163 million bankruptcy credit against Doe Run Peru. This decision was affirmed by a special chamber of the Superior Court of Lima in a 3-2 vote even though Peru's Attorney General's Office submitted an Opinion supporting DRP's position that non-compliance with the PAMA did not create a bankruptcy credit under Peruvian law. DRP appealed that decision to the Supreme Court of Justice, the highest judicial body in the Peruvian judiciary.

On November 3, 2015, the Supreme Court summarily rejected DRP's appeal. Instead of ruling on the merits of DPR's argument that non-compliance with the PAMA does not create a bankruptcy credit in favor of the MEM, the Supreme Court held that DRP (and Doe Run Cayman, who also participated in the appeal) had articulated why it considered the lower court's ruling to be incorrect, but that it had failed to offer a proposed rule that the Supreme Court could

accept or reject and that DRP's appeal lacked "clarity and precision." The Court did not explain why "a breach of the PAMA does not create a credit in favor of the MEM" was insufficiently clear.

With the Supreme Court's rejection of DRP's appeal, DRP exhausted all local remedies under Peruvian law against the MEM credit. The Peruvian judiciary's failure to nullify the MEM credit constitutes a denial of justice under customary international law and a breach of the Treaty's fair and equitable treatment provision.

If the Supreme Court had granted DRP's appeal and nullified the MEM credit, consistent with the initial ruling by INDECOPI Commission, all of MEM's votes in the bankruptcy proceedings would have been declared invalid and DRP could then have attempted to restructure instead of liquidate (and to do so without the US$ 163 million MEM credit, which is the largest credit in DRP's bankruptcy). In other words, when the Supreme Court rejected DRP's appeal in November 2015, Renco lost any chance to regain control of its investment and avoid DRP's liquidation. As a result, Renco lost permanent control of its investment and the economic value of its investment in Peru. That constitutes indirect expropriation in violation of Article 10.7 of the Treaty.

Renco seeks monetary compensation for these breaches of the Treaty. Renco estimates its damages at US$ 800 million.

Renco would welcome the opportunity to meet and attempt to resolve this treaty dispute amicably. If the parties are unable to resolve this dispute within 90 days of your receipt of this letter, then Renco will submit these claims to arbitration under the Treaty.

Very truly yours,

Edward G. Kehoe

EGK:mlr

cc: Jonathan C. Hamilton, Esq.
Andrea J. Menaker, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, D.C. 20005

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Edward G. Kehoe
Managing Partner-NYC
Direct Dial: +1 212 556 2246
Direct Fax: +1 212 556 2222
ekehoe@kslaw.com

12 de agosto de 2016

**VIA SERVICIO DE DESPACHO PRIORITARIO (*OVERNIGHT DELIVERY*)**

Dirección General de Asuntos de Economía Internacional
Competencia e Inversión Privada
Ministerio de Economía y Finanzas
Jirón Lampa 277, piso 5
Lima, Perú

**Re: Renco c. Perú: Notificación de Intención para iniciar un arbitraje conforme al Acuerdo de Promoción Comercial Perú - Estados Unidos.**

De nuestra consideración,

Escribimos en representación de nuestro cliente, Renco Group Inc., en relación al trato otorgado por el Perú a la inversión de Renco en dicho país, y la intención de Renco de iniciar un arbitraje en contra del Perú de conformidad con el Acuerdo de Promoción Comercial Estados Unidos-Perú que entró en vigencia el 1 de febrero de 2009 (el "Tratado").

El 9 de agosto de 2011, Renco inició un arbitraje conforme al Tratado, haciendo valer reclamaciones en virtud de la violación al Tratado y el incumplimiento de ciertos contratos de inversión. Mediante decisión de fecha 15 de julio de 2016, el tribunal que había sido designado para conocer de dichas reclamaciones las desestimó por razones técnicas de carácter jurisdiccional y sin perjuicio de la posibilidad de interponerlas nuevamente. Renco tiene la intención de interponer nuevamente algunas de aquellas reclamaciones relacionadas al Tratado en un nuevo arbitraje, conforme a dicho Tratado, en una manera que subsana el vicio técnico que sirvió de fundamento para la anterior desestimación.

Renco también pretende presentar dos nuevas reclamaciones en contra del Perú de conformidad con el Tratado, las que se generaron en el año 2015, según se describe en mayor detalle más adelante. Por consiguiente, y según lo requiere el Artículo 10.16.2 del Tratado, Renco por medio de la presente le hace llegar por escrito una notificación de intención de someter reclamaciones a arbitraje conforme al Tratado.

Asimismo, Renco, y su afiliada, Doe Run Resources Corporation ("DRRC"), tienen la intención de interponer otras reclamaciones, relativas a distintas medidas, en un arbitraje

separado conforme al procedimiento de resolución de controversias del Contrato de Transferencia de Acciones ("STA" por sus siglas en inglés) entre Empresa Minera del Centro del Perú S.A. ("Centromin") y Doe Run Perú S.R. LTDA ("DRP"), Doe Run Resources y Renco, de fecha 23 de octubre de 1997, y el Contrato de Garantía de fecha 21 de noviembre de 1997 (el "Arbitraje STA"). Activos Mineros posteriormente asumió las obligaciones de Centromin conforme al STA.

En el Arbitraje STA, Renco y Doe Run Resources interpondrán reclamaciones en contra de Activos Mineros y del Perú por el incumplimiento de sus obligaciones contractuales en relación a las demandas presentadas por ciudadanos peruanos en contra de Renco, Doe Run Resources y otros, actualmente pendientes en las Cortes de los Estados Unidos en St. Louis, Missouri. Los demandantes en los litigios de St. Louis persiguen la indemnización monetaria de los perjuicios causados por lesiones a sus personas que, según ellos afirman, serían imputables a las operaciones del Complejo Metalúrgico de La Oroya.

El domicilio comercial principal de Renco se encuentra ubicado en One Rockefeller Plaza, 29th Floor, New York, NY 10020. Su teléfono es 212-541-6000 y su número de fax es 212-541-6197. Renco es una persona jurídica constituida conforme a las leyes de Nueva York, Estados Unidos de América.

**Reclamaciones anteriores de Renco que Renco tiene la intención de interponer nuevamente**

En el anterior arbitraje conforme al Tratado, Renco interpuso reclamaciones en cuanto a que la imposición por parte del Perú de proyectos y requerimientos ambientales adicionales al mismo tiempo que, de manera improcedente, éste se rehusaba a otorgar de forma oportuna prórrogas razonables para cumplir con estas nuevas obligaciones, y su participación en una campaña de desprestigio que denigraba públicamente a DRP, afectando así su capacidad de obtener financiamiento, violaban el Tratado en varios aspectos. Renco tiene la intención de presentar tales reclamaciones en un nuevo arbitraje conforme al Tratado.

Renco no tiene la intención de presentar reclamaciones en el nuevo arbitraje conforme al Tratado relativas a las omisiones e incumplimientos del Perú respecto de los litigios de St. Louis. Según se señaló anteriormente, Renco y su afiliada, Doe Run Resources, tienen la intención de iniciar un arbitraje internacional separado conforme al procedimiento de resolución de controversias del STA con respecto a dichas demandas de terceros (en el evento que un proceso no vinculante ante un perito no culmine exitosamente).

**Las nuevas reclamaciones de Renco se refieren a violaciones a los Artículos 10.5 y 10.7 del Tratado.**

Renco es dueña de forma indirecta de Doe Run Perú ("DRP"), una compañía constituida según la ley peruana. Después de que uno de los acreedores de DRP iniciara un procedimiento concursal respecto de DRP ante la Comisión de Procedimientos Concursales del Instituto Nacional de Defensa de la Competencia y de la Protección de la Propiedad Intelectual (INDECOPI), el órgano legal dentro del Poder Ejecutivo peruano que administra los

procedimientos concursales, Perú presentó un reclamo evidentemente improcedente en dicho procedimiento concursal por una suma de US$ 163 millones. En el procedimiento concursal de DRP, el Ministro de Energía y Minas (o "MEM"), una autoridad central del Estado peruano, alegó que debido a que DRP no completó uno de sus nueve proyectos ambientales (conocidos como el "PAMA") dentro del plazo que el Perú y el MEM se habían rehusado a extender de manera improcedente, el propio MEM habría sido obligado a completar dichos proyectos. El MEM alegó además, también de manera incorrecta, que el monto de dinero que se estimaba era necesario para completar el proyecto PAMA pendiente constituía una "deuda" de DRP para con el MEM, constituyendo así un crédito concursal en el procedimiento concursal seguido ante el INDECOPI. Dicho crédito evidentemente improcedente entregaba al Perú cerca de un tercio de todos los derechos a voto en el comité de acreedores del concurso. También otorgaba al Perú el derecho a recuperar una gran parte de los dineros de DRP que deberían ir a acreedores legítimos, y complicaba gravemente los esfuerzos de DRP de cumplir con las obligaciones que adeudaba a otros acreedores legítimos. A lo largo del procedimiento concursal, el Perú usó sus derechos a voto como acreedor en perjuicio de DRP al, entre otras cosas, votar en contra de planes de reestructuración razonables, incluyendo uno propuesto por Renco, y apoyar un voto posterior para liquidar DRP.

DRP se opuso a la solicitud del MEM de reconocimiento de su crédito presentada ante la Comisión de Procedimientos Concursales del INDECOPI, la que en febrero de 2011 dictó una resolución rechazando el reclamo de crédito del MEM por US$ 163 millones sobre la base de que la alegación del MEM en cuanto a que tenía la obligación de completar el PAMA no constituía una "deuda" de DRP y por ello no era un reclamo que pudiera ser reconocido en un procedimiento concursal. La Comisión del INDECOPI explicó correctamente que el objetivo regulatorio del PAMA era procurar que el dueño de una actividad minera implementara los pasos necesarios para reducir o eliminar las emisiones. La Comisión del INDECOPI señaló además que, si el dueño del Complejo Metalúrgico La Oroya no completa un proyecto PAMA, la legislación aplicable no regula ni establece una obligación para el MEM de completar dicho proyecto PAMA y por ello no puede constituir un crédito concursal.

El MEM apeló la Resolución de la Comisión de Procedimientos Concursales del INDECOPI ante la Sala Especializada en Procedimientos Concursales del Tribunal de Defensa de la Competencia y de la Propiedad Intelectual (el "Tribunal INDECOPI"), el órgano de apelación dentro del INDECOPI, y, en noviembre de 2011, el Tribunal INDECOPI dictó una resolución revocando la resolución anterior de la Comisión de Procedimientos Concursales del INDECOPI argumentando que el no cumplimiento de un solo proyecto PAMA pendiente "generaba un perjuicio directo e inmediato" y que los costos que se estimaba eran necesarios para completar los proyectos PAMA constituían una estimación apropiada del monto de dicho perjuicio. Esta decisión suscitó una fuerte opinión disidente de uno de los miembros del Tribunal INDECOPI quien señaló que la inversión estimada necesaria para completar el PAMA en una fecha futura no constituye un crédito concursal válido, sino que dicho incumplimiento solamente autorizaba al MEM a: (i) imponer sanciones pecuniarias a la empresa minera y/o ejecutar las garantías de cumplimiento otorgadas para garantizar el cumplimiento del proyecto contenido en el PAMA; y (ii) en caso que el incumplimiento continuara, el cierre provisorio y, eventualmente, definitivo del yacimiento minero.

DRP impugnó la resolución del Tribunal INDECOPI mediante una acción administrativa ante el poder judicial peruano, el que asignó la causa al Cuarto Juzgado Contencioso Administrativo Transitorio de Lima. El Cuarto Juzgado Contencioso Administrativo Transitorio de Lima rechazó la solicitud de anulación de la resolución del Tribunal INDECOPI presentada por DRP y por lo tanto admitió el crédito concursal del MEM por US$ 163 millones en contra de Doe Run Perú. Esta decisión fue confirmada por una sala especial de la Corte Superior de Lima con una votación 3 a 2 aun cuando el Procuraduría General del Perú presentó un Informe apoyando la posición de DRP, en cuanto a que el incumplimiento del PAMA no originaba un crédito concursal según la ley peruana. DRP apeló esta última decisión ante la Corte Suprema de Justicia, el máximo órgano judicial del poder judicial peruano.

El 3 de noviembre de 2015 la Corte Suprema rechazó sumariamente la apelación de DRP. En lugar de fallar sobre el fondo del argumento de DRP en cuanto a que el incumplimiento del PAMA no crea un crédito concursal en favor del MEM, la Corte Suprema sostuvo que Doe Run Perú (y Doe Run Cayman, que también fue parte en la apelación) habían articulado el por qué consideraban que la decisión del tribunal inferior era incorrecta, pero no habían presentado una propuesta de decisión que la Corte Suprema pudiera aceptar o rechazar y que la apelación de DRP carecía de "claridad y precisión". La Corte no explicó por qué consideró que "un incumplimiento al PAMA no crea un crédito en favor del MEM" no era suficientemente claro.

Con el rechazo por parte de la Corte Suprema de la apelación de DRP, ésta última agotó todos los recursos locales de acuerdo a la ley peruana en contra del crédito del MEM. La no anulación del crédito del MEM por parte del poder judicial peruano constituye una denegación de justicia conforme al derecho internacional consuetudinario y una violación a la disposición sobre trato justo y equitativo del Tratado.

Si la Corte Suprema hubiera acogido la apelación de DRP y anulado el crédito del MEM, conforme con la decisión inicial de la Comisión de Procedimientos Concursales del INDECOPI, todos los votos del MEM en el procedimiento concursal habrían sido declarados inválidos y DRP podría entonces haber intentado su reestructuración en lugar de su liquidación (y hacerlo sin el crédito del MEM por US$ 163 millones, el que es el crédito más alto en el procedimiento concursal de DRP). En otras palabras, cuando la Corte Suprema rechazó la apelación de DRP en noviembre de 2015, Renco perdió toda oportunidad de retomar el control sobre su inversión y evitar la liquidación de DRP. Como resultado de ello, Renco perdió el control permanente de su inversión y el valor económico de su inversión en el Perú. Ello constituye expropiación indirecta, en violación al Artículo 10.7 del Tratado.

Renco persigue una compensación monetaria por estas violaciones al Tratado. Renco estima sus daños y perjuicios en US$ 800 millones.

Renco agradecería tener la oportunidad de reunirse e intentar resolver esta controversia relativa al tratado de manera amigable. Si las partes no pueden resolver esta controversia dentro de los 90 días siguientes a su recepción de la presente carta, entonces Renco someterá estas reclamaciones a arbitraje conforme al Tratado.

Atentamente,

Edward G. Kehoe

EGK:mlr

cc: Jonathan C. Hamilton, Esq.
Andrea J. Menaker, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, D.C. 20005